**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff , | ) | |
| | ) | |
| v. | ) | No. 1:23 CR00194-1 |
| | ) | |
| | ) | Judge Sharon Coleman |
| SHAUN HEALY | ) | |
| Defendant. | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Shaun Healy, by and through his attorney, Hal M Garfinkel, submit Defendant's

Sentencing Memorandum and shall advance argument at hearing that a below advisory

guideline sentence of 264 months in the Federal Bureau of Prisons is sufficient, but not

greater than necessary, to achieve the goals of sentencing.

**I.     OBJECTIONS AND CLARIFICATIONS TO THE PSR**

Defense counsel has no technical objections or clarifications to the PSR.

**II.     SENTENCING MEMORANDUM**

**1.  Legal Standards**

While the defense does not contest the advisory guideline calculation, as the

Court is aware, the Federal Sentencing Guidelines serve as a "starting point" and "initial

benchmark" when determining a just and appropriate sentence. See Gall v. United States,

552 U.S. 38, 49-51 (2007); Pepper v. United States, 562 U.S. 476, 490 (2011);

Kimbrough v. United States, 552 U.S. 85, 108 (2007) (quoting Gall, 552 U.S. at 49);

United States v. Hill, 645 F.3d 900, 905 (7th Cir. 2011). In this unique and different case,

the guidelines have even more of a diminished role in the imposition of a just sentence as

1

Mr. Healy has absolutely no criminal background, juvenile or adult, and as such, his rehabilitative potential is high as evidenced by his sex offender evaluation.

Thus, while the Court is obligated to calculate the guideline range, this case must be determined based on consideration of the § 3553(a) factors to arrive at a just and merciful sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. 18 U.S.C. §3553(a). See United States v. Lopez, 634 F.3d 948, 953-954 (7th Cir. 2011) (internal citations omitted) ("the Guidelines are, after all, guidelines [that] must be considered seriously and applied carefully... In the end, however, the defendant's sentence is the responsibility of the district judge, after careful consideration of all the relevant factors under 18 U.S.C. §3553(a).").

Adequate consideration of the §3553(a) sentencing factors help ensure that the sentencing decision is individualized, as it must be. The Supreme Court made this point clear when it emphasized that the punishment imposed, "should fit the offender and not merely the crime." Pepper, 562 U.S. at 487-88 (citations omitted). See also Gall, 552 U.S. at 52, (quoting Koon v. United States, 518 U.S. 81, 113 (1996)); see also United States v. Moore, 784 F.3d 398, 405 (7th Cir. 2015) (quoting Gall, 552 U.S. at 49-50) ("The court must consider all of the section 3553(a) factors, making 'an individualized assessment based on the facts presented.")

The "sufficient, but not greater than necessary" standard- also known as the "parsimony" clause---is the "overarching provision: of §3553(a). Kimbrough, 552 U.S. at 101. By its terms, that provision instructs and informs the Court to consider a sentence that is the least severe, i.e., not greater than necessary. See, United States v. Santoya, 493 F.Supp. 2d 1075, 1077 (E.D. Wis. 2007) ("This is the so-called 'parsimony provision,'

which requires district courts to impose the minimum punishment needed to satisfy the purposes of sentencing-just punishment, deterrence, protection of the public and rehabilitation of the defendant.") In this case, defense counsel strongly feels that based on the defendant's lack of juvenile or adult criminal background, his cooperation with law enforcement both at the scene and post arrest, and the results of a highly advanced sex offender evaluation, the Court has ample authority to sharply depart from the "starting point" provided by the advisory guidelines. Notwithstanding this concession, defense counsel must highlight and underscore the inescapable fact that those guidelines have been subjected to widespread criticism, which provides even more justification to question and deviate from them.

### a. The Indelible Flaws in the Severe Child Pornography Guidelines

Federal courts, the Sentencing Commission, and even the Department of Justice have all criticized the child pornography guidelines. Some of this criticism has included outright rejection of their application by numerous federal courts. For instance, Judge Weinstein from the Eastern District of New York opined as follows:

> the child pornography Guidelines are "fundamentally different from most and … unless applied with great care, can lead to unreasonable sentences that are inconsistent with what § 3553 requires.: United States v. Dorvee, 616 F.3d 174, 184 (2d Cir. 2010). Acceptance of this fact enhances a sentencing court's ability to properly comply with its duty to impose sentences that reflect the statutory goals of sentencing and are based on a required individualized assessment of the facts presented.

United States v. D.M., 942 F. Supp 2d 327, 352 (E.D.N.Y. 2013). See also United States v. Pelloski, 31 F.Supp. 3d 952, 955-56. (S.D. Ohio 2014) (quotation and citations omitted) ("There is widespread agreement among judges, lawyers, and legal scholars that

the guidelines for child pornography offenses are seriously flawed…..Indeed, the belief that the child pornography sentencing guidelines are flawed is shared by the Sentencing Commission and the United States Department of Justice.

Part of the peculiar and troubling nature of the child pornography guidelines is that they have been amended nine times since their inception in 1987, with each amendment increasing, sometimes dramatically, the severity of the base offense level and adding specific offense characteristics.  For example, the base offense level for receiving child pornography was 13 at the inception of the guideline.  In response to a congressional directive, the commission raised the base offense level to 15 in 1991. Then, the base offense level increased to 17 in November 1996. Section 2G2.2 was amended in 2000 and 2003 to add specific offense characteristics, but the base offense level remained at 17 for receipt of child pornography. In 2004, and in response to another Congressional directive, the base offense level increased markedly from 17 to 22.  See generally U.S. Sentencing Commission, The History of the Child Pornography Guidelines (2009).  Of note, and of significance to our case, the guideline for production cases was also ratcheted up over the years primarily on Congressional directives.  In 1987, the base offense level for § 2G2.1 was 25. In 1996, the base offense level was increased to 27 pursuant to a Congressional directive.  And in 2004, in response to the PROTECT Act, the base offense level shot up from 27 to 32 while adding a host of enhancements. See U.S. Sentencing Commission, 2012 Report to the Congress: Federal Child Pornography Offenses, p. 249.

Admittedly, the Commission has long criticized these congressional directed increases in the non-production child pornography guidelines which defense understands

and concedes might be distinguishable from our case which is a production case; however of significance, in 1991, when Congress considered directing the Commission to revoke a lower base offense level for receipt of child pornography, the Chair of the Commission informed the House of Representatives that the proposed action "would negate the Commission's carefully structured efforts to treat similar conduct similarly and to provide proportionality among different grades of seriousness,' and would instead require the Commission to rewrite the guidelines for these offenses in a manner that will reintroduce sentencing disparity among similar defendants." Dorvee, 616 F. 3d at 185. (citing Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines, Jan. 1, 2009, at pp. 4-9). The Commission also opposed the two-level enhancement for computer use that was added in 1996 on the grounds that it failed to distinguish between serious and ordinary offenders. Dorvee, 616 F.3d at 186. After the latest increases, the Commission sought permission to revise the guidelines using its expertise and review of empirical evidence, which it had been unable to do in response to Congressional directives. See, United States v. Jenkins, 854 F.3d 181, 188 (2d Cir. 2017) (quoting Dorvee, 616 F.3d at 184-86 ("we observed that the Sentencing Commission has not been able to apply its expertise but instead has increased the severity of penalties 'at the direction of Congress,' despite 'often openly oppos[ing] these Congressionally directed changes.").

To be sure, much or most of the criticism has been levied against U.S.S.G. § 2G2.2, the guideline that covers production, receipt, and transportation offenses which is the primary driver of the guidelines in this case. However, defense counsel wishes to reiterate to this Court that a key and common criticism of the child pornography

guidelines in totality is that they do not distinguish between the most serious offenders and the run-of-the mill cases because the specific offense characteristics apply in nearly every case and are thus 'inherent' to the offense itself. See Jacob, 631 F.Supp.2d at 1114-1115; Dorvee, 616 F.3d at 186. Due to these "inherent" enhancements, the Second Circuit in Dorvee observed how "adherence to the Guidelines results in virtually no distinction between defendants charged with possession, receipt, distribution, or production." Id. at 187.  That non-differentiating result is "fundamentally incompatible with § 3553(a)."

One of the most blatant examples of an "inherent" offense characteristic is the use of a computer (U.S.S.G § 2G2.2(b)(6)) for which Shaun receives two additional offense level points for each offense as stipulated in the plea declaration.  While this enhancement may have been relevant when first enacted, today virtually every child pornography offense involves the use of a computer, and the enhancement therefore applies in nearly every case. Indeed, it did not take long before the commission itself criticized this enhancement for failing to distinguish between serious and average offenders. See, United States v. Biddle, 2014 U.S. Dist. LEXIS 143733, at 18-19 (Case No. 1:13-CR-50-TLS; N.D. Ind. Oct. 9, 2014) (citation omitted) ("The Sentencing Commission has previously criticized the two-level computer enhancement, finding that the enhancement did not distinguish between serious commercial distributors of online pornography and run-of-the-mill users.").

Moreover, in Shaun's case, the use of a computer was also part of the offense conduct itself. See, United States v. Robinson, 669 F.3d 767, 778 (6th Cir. 2012) (discussing the enhancement for "use of a computer").  While this does not create a

"double counting" problem under case law, it nevertheless subjects the enhancement to reasoned criticism. Indeed, because it applies in virtually every child pornography case, this offense characteristic fails to distinguish more serious offenders and as such, is not a reasonable enhancement due to its inherent problematic application to offenders of all kind and status.

The criticism of the child pornography guidelines has led some to conclude that those guidelines are not the product of the Commission's deliberation, but rather of Congressional manipulation resulting in an overly harsh sentencing regime based more on politics and morality than empirical evidence. See, United States v. Stone, 575 F.3d 83,97 (1st Cir. 2009) ("we wish to express our view that the sentencing guidelines at [USSG § 2G2.2] are in our judgment harsher than necessary"); United States v. McNerney, 636 F.3d 772,777 (6th Cir. 2011) (citations omitted) (recognizing that "some courts and commentators have questioned the wisdom of the congressionally-directed Child Pornography Sentencing Guideline because they were the product of Congressional mandate rather than the Commission's preferred systematic, empirical approach"); United States v. Johnson, 588 F.Supp.2d 997, 1003 (S.D. Iowa 2008) ("As far as this Court can tell, [the Congressional modifications to the child pornography guidelines] do not appear to be based on any sort of empirical data, and the Court has been unable to locate any rationale for them beyond the general revulsion that is associated with child exploitation-related offenses.") While the § 3553(a) factors in this case amply justify a significant variance from the advisory guidelines, these well-reasoned criticisms of the child pornography guidelines should also be kept in mind.

2. <u>The § 3553(a) Factors.</u>

a. **Nature and Circumstances of the Offense----§ 3553(a)(1)**

In determining the sentence to be imposed, the Court must consider the "nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). Nothing that defense counsel or Shaun say is meant in any manner to minimize or reframe the pain, hurt, and suffering that his victims as well as the family of his victims have endured in the past and will continue to endure for some time in the future.

To be sure, Shaun's victims' voices are heard, and he accepts their harms as will be provided in the victim impact statements which shall be made part of the record. Make no mistake, Shaun accepts full responsibility for his actions and his acceptance is colored with shame, deep regret, and contrition. Having said this, it should be noted that the majority of Shaun's manipulative and unspeakable criminal conduct occurred during a short time spam from May to December 2022.

Of significance, Shaun's criminal conduct for which he has plead guilty occurred during the height of the Covid pandemic, a period in which Shaun experienced significant isolation and loneliness. Shaun's personal life was in uncontrollable chaos as his marriage was disintegrating before his eyes and the possibility that he would no longer live with his children in the same home became an ever-growing reality. While he and his former wife had not formally separated at the time of his arrest, for all intense and purposes Shaun's marriage was over. Shaun spent most evenings in the basement performing work related tasks or on the computer engaged in conduct for which he pled guilty before this Honorable Court. Often, he would sleep on the couch in the basement after spending most of his day alone or having minimal contact with his children and he

would retreat to his bedroom in early morning hours. Additionally, at this time, Shaun and his former wife were no longer intimate and essentially living under the same roof as transactional roommates. With regards to his professional life, Shaun was employed as a senior vice president for Havas, a global advertising and communications group. Following the outbreak of the Covid Pandemic, Havas instituted a policy requiring their employees work from their residences in conformance with Covid 19 travel restrictions. To add insult to injury, Shaun's isolation and loneliness was amplified by Havas' decision to have their employees work from home as Shaun no longer had the opportunity to socialize or interact with his group in any meaningful manner. Over time, Shaun slowly removed himself from the world, which included his former wife and two children whom he adores to this day and spent all his waking hours in his basement.

Interestingly, it should be noted that no allegations brought on behalf of the minor victims from federal or state law enforcement or the U.S. Attorney's Office allege that Shaun formed a concrete plan or took any furtive steps towards meeting any minors in person for the intended purpose of sexual contact or face to face communication.

Additionally, while there is no dispute or denial that Shaun posed as a minor for the explicit purpose of persuading or enticing his minor victims into producing child pornography for his benefit, there is no significant evidence to date that Shaun formed a conspiracy with others to produce, distribute, or possess child pornography. As such, Shaun's conduct should not be seen by this Court as one who supervised, directed, or lead others to conspire against his minor victims to produce child pornography nor did he engage in this conduct for pecuniary gain or profit.

### b. History and Characteristics of Defendant--- § 3553(a)(1).

In determining the sentence to be imposed, the Court must also consider the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). It is difficult, if not impossible, to articulate Shaun's personal history and characteristics. As enumerated in Exhibit A, defense counsel has provided the Court with a sexual offense risk and treatment needs assessment evaluation (**hereinafter "sex offender eval"**) administered by Dr. Richard Travis. To be sure, Dr. Travis is a leading expert in the field of forensic psychology and the assessment of sexually violent persons and has been qualified as such throughout the country in both federal and state courts. The sex offender evaluation provides both a holistic and clinical assessment of Shaun's personality, sexual interest, and risk to re-offend. Additionally, the sex offender eval measures Shaun's cognitive, social, and emotional functioning, sexual interests, history, and functioning, and recidivism through self-report data and forensic testing and provides a recommendation for manner and length of treatment needs.

Most notably, in our case, Dr. Travis administered the following procedures to Shaun which make up the bulk of the sex offender evaluation: 1) Clinical interview of Shaun; 2) Cognitive Capacity Screening Examination-"CCSE"; 3) MMPI-Personality testing; 4) Abel Assessment; 4) Risk Assessment; Stable 2007 and Static-99R.

Of significance, Dr. Travis opined that based on Shaun's test results on the *CCSE*, he estimated his intellectual functioning in the Average to High Average range. Additionally, Dr. Travis administered the Abel Assessment test which assessed Shaun's pattern of sexual interest and opined,….["Shaun demonstrated sexual interest on the *AASI-3-VRT* that was mostly consistent with his subjective reports. **He demonstrated**

10

**sexual interest only in adult females and postpubescent adolescent females. Sexual interest in postpubescent adolescent and adult females is not considered deviant and may be biologically normal in adult males who identify as straight in orientation. He demonstrated no sexual interest in prepubescent or pubescent females (up to 13 years old) or in males of any age. He did not demonstrate suspected preferential sexual interest in sadistic and masochistic stimuli."**

Moreover, Dr. Travis administered both the Stable 2007 and Static R-99 to measure Shaun's risk to reoffend and detailed his findings below as follows:

"Mr. Healy scored in the Level III risk category, the middle of five categories, "Average Risk," for sexual recidivism risk on the Static-99R. According to the *Stable-2007 Evaluators Workbook Revised 2017* (Brankley, Helmus, & Hanson, 2017) rules for combining Stable-2007 scores with Static scores, his Stable-2007 score (11) reinforced the level of risk associated with his Static-99R score in the Level III risk category (page 10). If the "stranger victim" item on the Static-99R is mis-scored and should be scored as absent, Mr. Healy's associated risk with the lowered Static-99R score (0 versus 1) would be in the Level II risk category, which is the second lowest of five risk categories and labeled, "Below Average Risk." However, combining his Stable-2007 score (11) with his reduced Static-99R score (0) would raise the risk associated with his Static-99R score into the Level III risk category (Brankley, et.al., 2017). **In summary, Mr. Healy's assessed sexual recidivism risk falls in the Level III, "Average Risk" category. His assessed sexual recidivism risk is that he is no more likely to commit a future sexual offense than are males who commit sexual offenses and are assessed to be at average risk to commit future sexual offenses.**

Moreover, Dr. Travis clearly articulated in his sexual offender evaluation that to impose an unusually lengthy in custody sentence would serve no significant therapeutic or clinical purpose for Shaun's rehabilitation or decrease his risk to reoffend. (See Travis Sexual Offender Evaluation, pgs. 22-23 "Mr. Healy's assessed "Average Risk" (Level III) of sexual recidivism, and his Stable-2007 assessment (pages 18-19) indicate that treatment is indicated and likely to reduce risk of future sexual offending (Hanson, Bourgon, McGrath, Kroner, D'Amora, Thomas, & Taverez, 2017; Hanson, et.al., 2009; Holper, et.al., 2024). **Longer periods of incarceration significantly increase post-release reoffending for high-risk individuals convicted of sexual offenses (Hsieh, Hamilton, & Zgoba, 2016). Affiliation with high-risk offenders increases risk for individuals who present lower levels of risk. Mr. Healy's "Average Risk" supports that he will likely benefit from treatment that targets identified needs in either a community or correctional setting (Holper, et.al., 2014).**

Treatment targets include intimacy deficits, general self-regulation, and sexual self-regulation. His average risk supports that with treatment; his sexual recidivism risk will decrease. when Mr. Healy reaches the age of 60, his assessed sexual recidivism on the Static-99R will be reduced into the Level II risk category ("Below Average Risk"). Based on his lack of antisocial history, he is unlikely to commit Major infractions while incarcerated. Based on his sexual interests and no history of non-contact offending (e.g., voyeurism or exhibitionism), he is unlikely to commit nonconsensual sexual misconduct infractions if he is incarcerated (Heil, Harrison, English, & Ahlmeyer, 2009). These two latter conditions support that his risk is unlikely to be elevated by a reasonable period of

incarceration, and his risk will be reduced by treatment participation such that he would present a below average level of sexual recidivism risk when he is released back into the community on supervision (e.g., probation or parole). Dr. Travis concludes his sexual offender evaluation by stating, "Mr. Healy's assesses average risk and expected decrease in sexual recidivism risk to below average with treatment and age support that lifetime incarceration is not necessary to protect the community."

In sum, Dr. Travis conducted a detailed sexual offender evaluation for Shaun Healy and the results generated from the Abel Assessment of Sexual Interest clearly establish that Shaun demonstrates no interest in prepubescent minors regardless of sex. Additionally, Shaun's sexual interest is confined to postpubescent adolescent and adult females which is not considered deviant.

With regards to whether Shaun is at an increased risk to reoffend or recidivate, Dr. Travis administered both the Stable 2007 and the Static-99 and opined to a reasonable degree of scientific certainty that "Mr. Healy's assessed sexual recidivism risk falls in the Level III, "Average Risk" category. His assessed sexual recidivism risk is that he is no more likely to commit a future sexual offense than are males who commit sexual offenses and are assessed to be at average risk to commit future sexual offenses." (See Travis "Sex Offender Eval" pg. 22)

To be sure, Shaun's test results on the AASI Able-Vrt, Stable -2007, and Static 99R, as well as Dr. Travis' clinical interview and observations made during the lengthy period of testing clearly demonstrate, without limitation, that Shaun possesses significant rehabilitative potential, and as such, does not warrant an unusually lengthy period of incarceration. As Dr. Travis stated, **"In his current treatment, Mr. Healy is self-critical**

13

**about his thinking and behaviors in the current case. he is beginning to feel remorseful and developing cognitive empathy (the intellectual understanding of how he has hurt others). Affective empathy appears within his capabilities based on his insightful questioning about what is wrong with him that allowed him to do the things he did to hurt others. In this examiner's opinion, Mr. Healy can be, and is likely to be, rehabilitated." …. Mr. Healy's assessed average risk and expected decrease in sexual recidivism risk to below average with treatment and age support that lifetime incarceration is not necessary to protect the community."** (See Travis Sex Offender Eval, pg. 25).

As mentioned above and documented in greater detail in the PSR and Dr. Travis' sex offender evaluation, from an outsider's vantage point, Shaun Healy was living the American Dream. He was a successful marketing executive and prior to his arrest, held the position of Senior Vice President of Client Service/Leadership wherein he managed billion-dollar advertising and marketing accounts and supervised more than 30 sales account executives. He was married and the father of two beautiful children. He owned a large home in an affluent suburb and was well respected by his peers and community at large.

However, to the utter shock and dismay of his family and friends, Shaun was living a double life. Fueled in part by the Covid 19 work restrictions, Shaun no longer interacted with his professional peer group in person as he was forced to work remotely from his basement residence. Shaun would spend most days and nights huddled in his basement, isolated from his coworkers and bosses where he felt respected and valued. He was no longer traveling for business trips to other cities or countries and rarely socialized.

He grew increasingly isolated from his professional peer group and family and spent most nights sleeping on the basement couch and only seeing his family briefly for meals.

To add insult to injury, Shaun's marriage was slowly eroding. Shaun reported to Dr. Travis that he and his wife had, "grown apart" over the years and had not been together sexually for 18 months prior to his arrest. He experienced significant financial pressure both in regard to his home which was heavily mortgaged and private catholic day school tuition for his two children. Of note, he reported to Dr. Travis:" …we were in a large house that we could not afford….and got sucked into fitting into a culture that we could not afford." He commented to Dr. Travis "that on more than one occasion, [he] told his wife that she would come home someday and find him hanging from the banister. (See Travis Sex Offender Evaluation, pg. 7 of 32.).

### c. The Need For the Sentence Imposed To Reflect The Seriousness of The Offense, Promote Respect For the Law, and Provide Just Punishment For the Offense. 18 U.S.C. 3553(a)(2)(A).

On May 28, 2025, Shaun Healy appeared before this Honorable Court and entered a blind plea of guilty to count 1 of the indictment charging him with Attempted Production of Child Sexual Abuse Material pursuant to 18 U.S.C. § 2251 (e) and counts 2 through 8 with Production of Child Sexual Abuse Material pursuant to 18 U.S.C.§2251(e).  The Court must consider the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. The Court must apply these concepts to Shaun's specific situation and articulate its thinking in some fashion.  The Court is permitted to weigh and discount these factors against other statutory factors that it is considering and to give different weights to different factors in the particular circumstances of Shaun's case.

To be sure, Production of Child Sexual Abuse Material is a serious offense and one which society demands be treated in the most serious manner. To be sure, Shaun is keenly aware of this reality and accepts full responsibility for his actions. Having said this, this Court can certainly demonstrate the seriousness of such offense, promote respect for the law, and provide just punishment by imposing a 264 month in custody sentence in the bureau of prisons especially when one considers that Shaun has already been publicly humiliated by his arrest, indictment, and guilty plea and branded for life as a federally convicted producer of child pornography. Additionally, as it comes to no surprise to the court, Shaun's has lost his wife to divorce, forfeited his immeasurable opportunity to raise his children and be in their lives in a meaningful way, and thrown away a career he spent decades studying and preparing for.

Additionally, a sentence of 264 months in the bureau of prisons would also be just, given the circumstances here, including Shaun's lack of adult or juvenile criminal background, substantial assistance to law enforcement following his arrest, and the results of his sex offender evaluation as it relates to his risk to reoffend. Any just sentence should take these realities into account.

### d. Need For Sentence to Afford Adequate Deterrence Section 3553(a)(2)(B).

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. See Andrew von Hirsch et al. Criminal Deterrence and Sentence Severity; An Analysis of Recent Research (1999) (concluding that "correlations between sentence severity and crime rates… were not sufficient to achieve statistical significance," and that "the studies

16

reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects").

The Sentencing Commission has found that "[t]here is no correlation between recidivism and guidelines' offense level… While surprising at first glance, this finding should be expected. The guidelines' offense level is not intended or designed to predict recidivism." U.S. Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 15 (2004) ["U.S. Sentencing Commission, Measuring Recidivism"]

Nonetheless, the Court must consider the need for the sentence to afford adequate deterrence to the criminal conduct. The Court is permitted to weigh this factor against other factors that it is considering. For the same reasons noted above, a sentence of 264 months in the bureau of prison can serve the purpose of general deterrence in Shaun's case. Additionally, a sentence of 264 months in the federal bureau of prisons in light of all that has publicly, and privately befallen Shaun and his family, will send a strong message of deterrence to any would be child pornographer possessor, distributor, or producer contemplating committing a federal felony such as Production of Child Pornography.

### e. Sentence Imposed Must Protect Public From Future Crimes committed by Shaun Healy. Section 3553(a)(2)(C).

The Court must consider the need for the sentence to protect the public from further crimes by Shaun Healy. It goes without saying that should this Court impose a sentence of 264 months in the bureau of prisons, the public will be protected from Shaun committing any future crimes. He has learned his lesson and wants only to move on with his life. Indeed, Shaun's history and characteristics make him a very low risk to re-

offend. According to the Commission, recidivism rates in general (defined to include technical supervised release violations) 'decline relatively consistently as age increases," from 35.5% for offenders under age 21, down to 12.7% for offenders aged 41 to 50, and down to 9.5% for offenders over age 50. U.S. Sentencing Commission, Measuring Recidivism at 12 & Exh 9. For sex offenders, too, recidivism declines with age, and only a few child sex offenders recidivate after age 60. See RK Hanson, Recidivism and Age: Follow-up Data from 4,673 Sexual Offenders, 17 J. Interpers. Violence 1046, 1054 (2002). The only factors found relevant to sentencing decisions that also affected the likelihood of recidivism were age and marriage. The finding that age reduced the likelihood of committing subsequent offenses is consistent with the body of research that finds that offenders 'age out' of crime. Tina . Freiburger & Brian M. Iannacchione, An Examination of the Effect of Imprisonment on Recidivism, 24 Crim. Just. Stud. 369,377 (2011).

The Commission's research also demonstrates that employment, education, and family ties and responsibilities all predict reduced recidivism, See U.S. Sentencing Commission, Measuring Recidivism at 12-13 & Ex. 10; and the "First Offender" 8 (2004), as does substantial other research. For sex offenders, cognitive behavioral therapy substantially reduces recidivism. U.S. Department of Justice, Center for Sex Offender Management, Understanding Treatment for Adults and Juveniles Who Have Committed Sex Offenses 10 (2006).

Should this Court impose a 264 month in custody sentence in the bureau of prisons, upon his release from the BOP, Shaun would be 63.5 years old.

Therefore, taking into account Shaun's anticipated age at time of supervised release, his strong family support and unwavering love and dedication as well as the test results of Dr. Travis' sex offender evaluation support the conclusion that he is most unlikely to re-offend.

### f. Needed Educational or Vocational Training, Medical Care, or Correctional Treatment in Most Effective Manner. Section 3553(a)(2)(D).

The Court must consider the need for the sentence imposed to provide Shaun with the needed educational, or vocational training, medical care, or correctional treatment in the most effective manner. As for educational training, Shaun graduated from Drake University in 1998 with a Bachelor of Science in Business. It goes without saying that a sentence of 264 months in the bureau of prisons is more than sufficient but not greater than necessary to provide Shaun with the necessary educational supplementary tools to reintegrate into society and to become a useful member of society. So too, regarding medical and mental health treatment, a sentence of 264 months in the bureau of prisons would provide Shaun with the necessary mental health services, including group and individual psychotherapy to address his psychological issues which led to his involvement with child pornography. A sentence of 264 months in the bureau of prison to be determined by this court is sufficient to adequately address the educational and/or vocational services and medical and mental health services in the most effective manner possible.

### g. Need to Avoid Unwarranted Sentence Disparities Among Defendants. Section 3553(a)(6).

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct". Title 18 U.S.C. Section 3553(a)(6). Of note, whether any differences among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. To be sure, when the court examines the conduct and sentences previously imposed of past defendants with similar conduct and offender characteristics, a sentence of 264 months in the bureau of prisons mitigates against an unwarranted sentence disparity.

## III.        Shaun's Substantial Assistance as Mitigation Under 3553(a).

On June 20, 2023, Shaun provided a truthful and credible proffer to Agent Steven Moran of Homeland Security and Assistant U.S. Attorneys Hussain and Pierson regarding his involvement and knowledge of others involved in the illicit production and distribution of child pornography and, as such, constitutes substantial assistance warranting a downward departure from the advisory guideline range. More specifically, Shaun provided Agent Moran and assistant U.S. attorneys Hussain and Pierson credible information regarding an individual believed by law enforcement to be involved in child pornography using a username: Charlielottie19 on snapchat, a digital platform often used to send and receive child pornography. While Shaun's information did not yield an arrest or formal charges of an individual/s known to law enforcement to be involved in child pornography, Shaun truthfully cooperated with law enforcement during the entire proffer and offered a willingness to cooperate with law enforcement in the future if they so desired.

Of significance, Shaun's cooperation during the June 20, 2023, proffer and his willingness to cooperate with law enforcement in the future regarding child pornography or any subject of interest to law enforcement was not compelled by a plea agreement or threat of prosecution but rather stemmed from Shaun's voluntary decision to assist law enforcement. Not only did Shaun offer substantial assistance to federal law enforcement and prosecutors with the U.S. Attorney's Office for the Northern District of Illinois following his federal detention but at the time of his arrest body cam captured by a Kane County deputy shows Shaun walking down the stairs with his cell phone and freely providing Kane County officers with the incriminating evidence. He provided Kane County sheriffs with his usernames and passwords for all his digital devices and did not place an additional burden on law enforcement to get a search warrant for his digital devices. Additionally, during the on-scene interview conducted by a Kane County deputy and Shaun, the Officer stated, " …in all my years of law enforcement, I have never seen an individual so freely provide us with the evidence."

To be sure, Shaun's cooperation with law enforcement and federal prosecutors demonstrates that he was not the architect of the criminal scheme but a participant willing to expose its structure and actors. Shaun's decision to cooperate reflects remorse, accountability, and a genuine desire to assist in dismantling harmful cohorts engaged in child pornography.

In sum, Shaun's substantial assistance to HSI and the U.S. Attorney's Office is a compelling basis for leniency under § 3553(a). Defense counsel adamantly believes Shaun's past cooperation and willingness to cooperate in the future has and will advance

the Government's efforts to combat child exploitation and reflects a sincere commitment to justice and, as such, warrants a below advisory guideline range.

**IV.        Conclusion.**

In conclusion, Shaun takes full responsibility for his actions. Nobody forced him to engage in the production of child sexual abuse material. For his actions, Shaun will forever be branded as a federally convicted felon which he will have to carry for the rest of his life. When this Court assesses this case and fashions a sentence, however, he respectfully asks that due consideration be paid to the law-abiding life he led prior to his arrest, the minimal risk to reoffend or recidivate upon release, his senior status at the time of release, his substantial assistance to law enforcement without the expectation of any benefit in return, his strong rehabilitative potential and impose a sentence of 264 months in the bureau of prisons and a period of supervised release this court deem just and fair.

Respectfully submitted,

/s/Hal M.Garfinkel
Hal M Garfinkel
Law Offices of Hal M. Garfinkel
134 North LaSalle Street, Suite 860
Chicago, Illinois 60602
L; (312) 629-0669
C: (773) 715-7571
hal@halgarfinkellaw.com

Attorney for Shaun Healy

22

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on January 25, 2026, I electronically filed the forego

Sentencing Memorandum with the Clerk of Court using the CM/ECF system, which will

send notifications of such filing to Assistant U.S. Attorney Saqib Hussain.

/s/Hal M.Garfinkel
Hal M Garfinkel
Law Offices of Hal M. Garfinkel
134 North LaSalle Street, Suite 860
Chicago, Illinois 60602
L: (312) 629-0669
C: (773) 715-7571
hal@halgarfinkellaw.com

Attorney for Shaun Healy

23